**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SARAH BOYD, individually and on behalf of all others similarly situated, | CASE NO. |
| PLAINTIFF, | **CLASS ACTION COMPLAINT** |
| v. | |
| EXECUBUS, INC., d/b/a VAMOOSE BUS, | **JURY TRIAL DEMANDED** |
| DEFENDANT. | |

Plaintiff Sarah Boyd, individually and on behalf of all others similarly situated, alleges as follows based on personal knowledge as to herself, on the investigation of counsel, and on information and belief as to all other matters.

**NATURE OF THE ACTION**

1.      Plaintiff brings this Class Action Complaint against Execubus, Inc., d/b/a Vamoose Bus (hereinafter "Vamoose" or "Defendant") for its use of "bait-and-switch" tactics that mislead consumers about the true price of tickets that Defendant sells to lure consumers into paying higher prices than they otherwise would.

2.      Vamoose Bus is an intercity bus transportation company that provides scheduled motorcoach service between the Washington, D.C. metropolitan area and New York City. Vamoose markets itself as a leading curbside bus option offering reserved seating and onboard amenities for passengers traveling along the DC–NYC corridor.

3.      Vamoose's Northern Virginia stops — located in and around Arlington—serve the heart of Northern Virginia's dense residential and commuter population.  Millions of consumers travel from the Virginia–DC–Maryland area to New York City annually.

1

CLASS ACTION COMPLAINT

4.      Vamoose operates and controls the website www.vamoosebus.com, its primary outlet for bus ticket sales. The advertised price for each ticket sold by Vamoose excludes an unavoidable fee that Vamoose applies to all transactions on the website.

5.      Defendant unlawfully advertises and displays ticket prices on its website without including all mandatory fees or charges that customers must ultimately pay. Defendant uses a deceptively low initial price to lure consumers into the purchase process—the "bait." Then, after the consumer has relied on that low advertised price and decided to buy, Defendant adds hidden fees—the "switch."

6.      In other words, Defendant conceals its mandatory fees until after consumers have invested time selecting tickets and have committed to purchasing based on the incomplete, deceptively low advertised price. Each stage of Defendant's checkout process is designed to increase consumer commitment so that, by the time the hidden fees are revealed, consumers—having already expended time and effort—are more likely to complete the transaction.

7.      Accordingly, Plaintiff brings this action individually and on behalf of all similarly situated consumers who purchased tickets from Defendant's website during the relevant statutory periods. Based on Defendant's unlawful conduct Plaintiff seeks damages, restitution, and reasonable attorneys' fees and costs for violations of Virginia's All-In Pricing Law, Va. Code Ann. § 59.1-608, and the Virginia Consumer Protection Act (VCPA), Va. Code Ann. § 59.1-196 *et seq*.

## JURISDICTION AND VENUE

8.      The Court has subject-matter jurisdiction over this civil action pursuant to 28 U.S.C. § 1332. The putative class exceeds 100 members, the amount in controversy exceeds $5,000,000,[1] and at least one class member is a citizen of a state different from the Defendant.

---

[1] On information and belief, the Defendant has sold at least ten thousand tickets to members of the putative class during the statutory periods.

CLASS ACTION COMPLAINT

9.     The Court has personal jurisdiction over the Defendant because its principal place of business is in this District. Additionally, the claims arise from and are directed at pricing policies, practices, and decisions devised, approved and controlled by the Defendant operating from its headquarters in this District, and the Defendant processes and captures illegal fees in this District.

10.    Venue is proper in this Court because Defendant resides in this District and a substantial portion of the occurrences and wrongdoing complained of herein occurred in this District.

## PARTIES

11.    Plaintiff Sarah Boyd is a natural person and a resident of Virginia.

12.    On or about, November 11, 2025, while physically located in Virginia, Plaintiff purchased 2 bus tickets from Defendant's website for travel terminating in Virginia.

13.    During this transaction, Plaintiff was first presented with a screen allowing her to input her itinerary details, including arrival and departure locations, date of travel, and number of passengers.

14.    From there, Plaintiff was brought to another screen which quoted her several departure times on her chosen date and quoted her a specific price for each prospective departure.

15.    On this screen for the first time, Plaintiff was put on a 10-minute clock, wherein if she did not buy tickets within 10 minutes the transaction would cancel.

16.    Plaintiff was prompted to press the "select" button to pick her desired departure time at a specific quoted price.

17.    On the next screen, Plaintiff was offered the option of selecting seats.

CLASS ACTION COMPLAINT

18.     Only after selecting tickets for a specific route, date, and departure time, being quoted a ticket price, choosing to buy based on that quoted price, and being offered the opportunity to select seats, was Plaintiff shown additional mandatory charges.

19.     Those mandatory charges were labeled "Booking Fee" and "Fuel Surcharge." Plaintiff paid these mandatory charges as part of the purchase price. On information and belief, Defendant has since renamed and/or consolidated these charges into a single "Service Fee" that is disclosed at the same stage of the purchase flow.

20.     Defendant advertised and displayed a ticket price that did not clearly and conspicuously include the total price of the tickets.

21.     Instead, Defendant charged Plaintiff mandatory fees and surcharges that were not included in the ticket price Defendant initially advertised or displayed.

22.     Plaintiff was unaware of these mandatory fees and surcharges when she selected her itinerary and chose tickets based on the lower quoted price.

23.     The deceptively low, initially advertised price was a substantial factor in Plaintiff's decision to purchase the tickets. As a direct result of Defendant's pricing practice, Plaintiff paid more than the price Defendant initially displayed—specifically, Plaintiff paid the mandatory 'Booking Fee' and 'Fuel Surcharge' in addition to the advertised ticket price.

24.     Defendant lured Plaintiff in with deceptively low initial prices, cultivating purchasing commitment based on that initial price. Defendant's purchase flow was designed to cultivate commitment to the transaction (including by imposing a time limit and requiring additional steps such as seat selection) before disclosing mandatory fees, thereby dissuading comparison shopping and increasing the conversion rate of Defendant's website.

CLASS ACTION COMPLAINT

25.    Defendant intentionally excluded these mandatory fees from the displayed and advertised ticket prices and disclosed them only after Plaintiff—and all other consumers purchasing tickets through Defendant's websites—had invested significant time and effort selecting tickets, thereby increasing the likelihood that Plaintiff would complete the purchase notwithstanding the higher total price.

26.    Defendant Execubus, Inc. d/b/a Vamoose Bus is a corporation organized under the laws of New York with its principal place of business in New York, New York.

## DRIP PRICING AND LATE DISCLOSED HIDDEN FEES ARE DECEPTIVE, UNFAIR, ANTI-CONSUMER AND ANTI-COMPETITIVE

27.    Drip pricing is a bait-and-switch pricing technique "in which firms advertise only part of a product's price and reveal other charges later as the customer goes through the buying process."[2]  In a drip pricing scheme mandatory fees — like those charged by Defendant — are foisted upon consumers after they have been lured in by a misleadingly low advertised price. These surprise fees have been dubbed "junk fees" by the Federal Trade Commission ("FTC"). [3] Research shows that consumers ambushed by hidden fees at checkout pay upward of twenty percent more than when the actual price was disclosed upfront.[4]

---

[2] Trade Regulation Rule on Unfair or Deceptive Fees, Fed. Trade Comm'n (Jan. 2025), available at https://www.federalregister.gov/documents/2025/01/10/2024-30293/trade-regulation-rule-on-unfair-or-deceptive-fees

[3] The FTC classifies "junk fees" as "unfair or deceptive fees that are charged for goods or services that have little or no added value to the consumer including goods or services that consumers would reasonably assume to be included within the overall advertised price" or fees that are "hidden," such as those "disclosed only at a later stage in the consumer's purchasing process or not at all." Unfair or Deceptive Fees Trade Regulation Rule Commission Matter No. R207011, 87 Fed. Reg. 67413 (proposed Nov. 8, 2022) (codified at 16 C.F.R. pt. 464).

[4] Morgan Foy, University of California-Berkley, Haas School of Business, "Buyer Beware: Massive Experiment Shows Why Ticket Sellers Hit You with Last Second Fees" (Feb. 9, 2021), https://newsroom.haas.berkeley.edu/research/buyerbeware-massive-experiment-shows-why-ticketsellers-hit-you-with-hidden-fees-drip-pricing/ (concluding that consumer expenditure on tickets increased 21% when true price not disclosed initially).

CLASS ACTION COMPLAINT

28.     It is estimated that junk fees cost Americans over $90 billion each year.[5] Research has shown that consumers who are not provided the complete price until checkout are likely to proceed with their purchase even after the junk fee is revealed because they have already factored the deceptively low price into their decision and built purchasing commitment as they clicked through the transaction.

29.     Research shows that consumers place stock in initial prices and tend to proceed with transactions even after exorbitant and unpredictable fees have been added despite their better judgment—despite the fact that continuing to search for cheaper prices would be more "optimal"—because consumers want to avoid "the cost of the time and cognitive effort involved" in continuing to search for a product or service.[6] Once consumers decide what to buy, they are unlikely to depart from that decision because of the "additional cognitive effort" involved in resuming their search.[7] Indeed, as companies that engage in junk fee practices are aware, consumers choose products or services based on the advertised "base price," and not based on the price inclusive of fees, which is obscured by partitions in the purchase flow.[8] In fact, studies show that "consumers exposed to drip pricing . . . are significantly more likely to 1) initially select the option with the lower base price, 2) make a financial mistake by ultimately selecting the option

---

[5] https://bidenwhitehouse.archives.gov/briefing-room/statements-releases/2024/04/24/readout-of-white-house-state-legislators-convening-on-junk-fees/

[6] Mary W. Sullivan, Economic Issues: Economic Analysis of Hotel Resort Fees, Bureau of Economics Fed. Trade Comm'n (Jan. 2017), at 16–17, https://www.ftc.gov/system/files/documents/reports/economic-analysis-hotel-resort-fees/p115503_hotel_resort_fees_economic_issues_paper.pdf

[7] *Id*. at 17.

[8] Alexander Rasch et al., Drip Pricing & Its Regulation: Experimental Evidence, 176 J. Econ. Behavior & Org. 353 (2020), available at https://www.sciencedirect.com/science/article/abs/pii/S0167268120301189?via%3Dihub  (In controlled experiment, buyers "based their purchase decision exclusively on the base price."). *See also id. (*"buyers may be hurt" because "[w]hen there is uncertainty over possible drip prices . . . consumers more frequently fail to identify the cheapest offer."*)*

CLASS ACTION COMPLAINT

that has a higher total price than the alternative option, given the add-ons chosen, and 3) be relatively dissatisfied with their choice."[9]

30.     The FTC's Bureau of Economics has found that consumers are harmed by drip pricing because they are forced "either to incur higher total search and cognitive costs or to make an incomplete, less informed decision that may result in a more costly [transaction], or both."[10]

31.     The FTC has characterized junk fees as especially harmful when they are hidden (i.e., disclosed only at a later stage in the purchasing process), because openly disclosed junk fees enable consumers to immediately determine that the cost of an item is not favorable relative to the cost charged by competitors and choose to do business elsewhere. As a result, the product or service listed by bad actors like the Defendant appears cheaper to consumers than competitors' products or services, even though the total cost of the product or service, inclusive of junk fees, is equally, if not more, expensive than those other companies' products or services.

32.     Adding hidden junk fees after securing purchase commitment also generates significant burden for individual consumers, who, when confronted with drip pricing "pay upward of twenty percent more than when the actual price was disclosed upfront."[11] By concealing the actual price of tickets, sellers like Defendant force consumers to spend "additional time"

---

[9] Shelle Santana et al., (2020) Consumer Reactions to Drip Pricing. Marketing Science 39(1):188-210. https://doi.org/10.1287/mksc.2019.1207

[10] Mary W. Sullivan, Economic Issues: Economic Analysis of Hotel Resort Fees, Bureau of Economics Fed. Trade Comm'n (Jan. 2017), at 16–17, https://www.ftc.gov/system/files/documents/reports/economic-analysis-hotel-resort-fees/p115503_hotel_resort_fees_economic_issues_paper.pdf

[11] *See* Unfair or Deceptive Fees Trade Regulation Rule Commission Matter No. R207011, supra n.4 (explaining that hidden junk fees therefore "impose substantial economic harms on consumers")

CLASS ACTION COMPLAINT

comparison shopping for tickets than they otherwise would which represents a cognizable injury.[12]

33.    In sum, using bait-and-switch hidden fee tactics is bad for markets and bad for consumers.

## VIRGINIA ENACTED ONE OF THE NATION'S FIRST LAWS PROTECTING CONSUMERS FROM HIDDEN FEES

34.    On May 2, 2025, Virginia took aim at junk fees, enacting Senate Bill 1212, Virginia's All-In Pricing law. SB 1212, which became effective on July 1, 2025, is one of the first laws of its kind in the United States. The law prohibits the "advertise[ment] or display [of] a price for goods or services without clearly and conspicuously[13] displaying the total price, which shall include all mandatory fees or surcharges." Va. Code Ann. § 59.1-608(A) .  "Mandatory fees or surcharges" includes any additional fee or surcharge that must be paid in order to purchase the good or service being advertised." Va. Code Ann. § 59.1-607. Mandatory fees or surcharges do not include "taxes or fees imposed on the consumer by a government or government-approved entity or assessment fees of a government-created special district or program paid to the government or government-approved entity." *Id*.

---

[12] *See e.g. Kahn v. Walmart Inc.*, 107 F.4th 585, 601 (7th Cir. 2024)("Bait-and-switch pricing schemes like the one alleged here lead to injuries that consumers cannot reasonably avoid, which come in the form of higher prices and search costs."(internal quotations omitted); Tom Blake et al., (2021) Price Salience and Product Choice. Marketing Science 40(4):619-636. https://doi.org/10.1287/mksc.2020.1261 (A peer reviewed industry study, finding that drip pricing "makes price comparisons difficult and results in consumers spending more than they would otherwise" and that "users who weren't shown the ticket fees upfront ended up spending about 20% more money and were 14% more likely to complete [the transaction].").

[13] "Clear and conspicuous" or "clearly and conspicuously" means in larger type than the surrounding text, or in contrasting type, font, or color to the surrounding text of the same size, or set off from the surrounding text of the same size by symbols or other marks, in a manner that clearly calls attention to the language." Va. Code Ann. § 59.1-607 (adopting definition from Va. Code Ann. § 59.1-207.45.).

CLASS ACTION COMPLAINT

35. Consumers injured by a violation of Virginia's All-In Pricing law are entitled to the same remedies as those afforded under the Virginia Consumer Protection Act, including statutory damages. Va. Code Ann. § 59.1-610.

36. Many states and the federal government have joined Virginia and banned drip pricing practices by ticket sellers. Yet, as discussed below, Defendant has engaged in a sustained campaign of drip pricing, in clear violation of Virginia law.

## DEFENDANT'S UNLAWFUL HIDDEN FEES

37. Defendant's markup tactics operate uniformly across all ticket offerings on its website. Only after consumers have (1) selected a specific number of tickets, (2) to a specific destination, (3) at a specific price, (4) for a specific date and time, and (5) selected seats for each leg of their trip, are they confronted with Defendant's hidden $4.50 Service Fee.

38. Defendant's online purchase flow is intentionally designed with "dark patterns"—defined as online design tactics that trick or manipulate users into making choices they might not otherwise make—to heighten purchasing commitment and pressure consumers to complete transactions despite the sudden addition of significant, undisclosed fees relative to the total ticket price.

39. As depicted in Figure 1 below, upon accessing the landing page of Defendant's website, users are prompted to select the origin and destination of their trip, the number of passengers, dates of travel, and whether the itinerary will be one way or a roundtrip:

CLASS ACTION COMPLAINT



***Figure 1[14]***

40.     After inputting trip information, consumers are then shown a list of departure times, their selected date and quoted a per seat price for each ticket, as shown at Figure 2 below.



***Figure 2***

[14] The exemplar purchase flow displays a round-trip journey from Arlington, VA to Penn Station in New York, NY.

10

CLASS ACTION COMPLAINT

41.    Further, as shown above on the right side of Figure 2, consumers are put on a countdown upon initiating the purchase process. Countdown clocks assist rulebreakers like Defendant to pressure consumers into completing their purchases at the end of their transaction despite the increased price by creating a false sense of urgency. The FTC has called out these countdown tactics as an anti-consumer dark pattern.[15]

42.    Upon selecting a ticket for their initial leg, consumers can select seats for that portion of their trip, as shown in Figure 3:



*Figure 3*

---

[15] *Id*. at 22.

CLASS ACTION COMPLAINT

43.     Next, consumers are prompted to select a return trip and are shown a list of departure times, their selected date and quoted a per seat price for each ticket, as shown in Figure 4:



*Figure 4*

44.     Upon selecting a ticket for their return leg, consumers can select seats, as shown in Figure 5 below:

CLASS ACTION COMPLAINT



*Figure 5*

45.      Only after selecting tickets for a specific location, date, and time, being quoted a ticket price, choosing to buy based on that price, are users confronted with the Defendant's hidden Service Fee, as shown in Figure 6:

CLASS ACTION COMPLAINT



*Figure 6*

46.     Complying with Virginia's consumer protection laws is straightforward: a company like Defendant must display and advertise the price of its services that includes all mandatory fees. Defendant could have easily configured its website to list ticket prices inclusive of all mandatory fees. However, Defendant chose not to, precisely to take advantage of the fact that hiding the mandatory fees at the initial stages increases conversions from click-through browsing to ticket sales, even as it harms consumers, disadvantages compliant competitors, and is illegal.

47.     Defendant's employment of hidden fees in conjunction with "dark patterns" as discussed above was fraudulent conduct designed to undermine consumer choice.

<u>**CLASS ACTION ALLEGATIONS**</u>

48.     Plaintiff brings this action on her own behalf and on behalf of all persons similarly situated as a class action.

49.     Plaintiff seeks to represent a Class defined as:

All persons who while in the Commonwealth of Virginia and within the applicable statutory period, up to and including the date of final judgment in this action, purchased a

CLASS ACTION COMPLAINT

ticket on a ticketing website operated by Defendant where all mandatory fees were not included in the initially displayed or advertised price of the ticket.

50.     Plaintiff also seeks to represent a Drip Pricing Subclass defined as:

All persons who while in the Commonwealth of Virginia, from July 1, 2025, up to and including the date of final judgment in this action, purchased a ticket on a ticketing website operated by Defendant where all mandatory fees were not included in the initially displayed or advertised price of the ticket.

51.     Excluded from the classes are Defendant, its corporate parents, subsidiaries, franchisees and affiliates, officers and directors, any entity in which Defendant has a controlling interest, and the legal representatives, successors or assigns of any such excluded person or entities, and the Court to which this action is assigned.

52.     Plaintiff reserves the right to amend or modify the class description with greater specificity or further division into subclasses or limitation to particular issues based upon discovery or further investigation.

53.     *Numerosity.*   The members of the Class are so numerous that joinder of all members is impracticable. While the exact number of class members is currently unknown to Plaintiff, on information and belief the Class is comprised of thousands of consumers in the Commonwealth of Virginia. The precise number of Class members and their identities are unknown to Plaintiff at this time but may be determined through discovery. Class members may be notified of the pendency of this action by postal or electronic mail and/or publication through the Defendant's sales records.

54.     *Commonality.* Common questions of law and fact exist for all Class members and predominate over questions affecting only individual class members. Common legal and factual questions include, but are not limited to:

CLASS ACTION COMPLAINT

(a)     Whether Defendant's hidden service fee was a "mandatory fee or surcharge" under Virginia law;

(b)     Whether the Class members were uniformly subjected to a hidden fee;

(c)     Whether Defendant's conduct alleged above violated Va. Code Ann. § 59.1-608;

(d)     Whether Defendant's conduct alleged above violated Va. Code Ann. § 59.1-196 *et seq.*

(e)     Whether Plaintiff and the Class are entitled to, and the amount of any, damages and/or restitution;

(f)     Whether Defendant should be enjoined from further engaging in the misconduct alleged herein; and

(g)     Whether Plaintiff and the Class are entitled to attorneys' fees and costs.

55.     ***Typicality.*** Plaintiff's claims are typical of the claims of the Class in that Plaintiff, like all proposed Class members, was exposed to Defendant's misrepresentations, purchased tickets on Defendant's websites, and sustained damages from Defendant's uniform wrongful conduct, based upon Defendant's wrongful acts alleged herein.

56.     ***Adequacy***. Plaintiff will fairly and adequately protect the Class members' interests.  Plaintiff has no interest antagonistic to the Class members' interests, and Plaintiff has retained counsel that have considerable experience and success in prosecuting complex class actions and consumer-protection cases.

57.     ***Superiority***. The class mechanism is superior to other available means for the fair and efficient adjudication of Class members' claims.  Each individual Class Member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendant's liability.  Individualized litigation

CLASS ACTION COMPLAINT

increases the delay and expense to all parties and multiplies the burden on the judicial system presented by this case's complex legal and factual issues.  Individualized litigation also presents a potential for inconsistent or contradictory judgments.  In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendant's liability.  Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

58.    Without a class action, Defendant will continue a course of action that will result in further damages to Plaintiff Boyd and members of the Class and will likely retain the benefits of its wrongdoing.

59.    Based on the foregoing allegations, Plaintiff Boyd's claims for relief include those set forth below.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
### Violation of the VCPA, Va. Code Ann. § 59.1-196 *et seq.*

60.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

61.    Plaintiff and the members of the Class are "persons" within the meaning of Va. Code Ann. § 59.1-198.

62.    Defendant is a "supplier" as defined by Va. Code Ann. § 59.1-198 because it is engaged in the business of advertising, selling, and offering for sale goods or services to consumers in the Commonwealth of Virginia.

63.    Defendant's sale of bus tickets, provision of motorcoach services, and operation of an online booking platform—which offers consumers greater convenience and assurance than

17

CLASS ACTION COMPLAINT

purchasing tickets at a physical ticketing office—constitute a "consumer transaction" under § 59.1-198 because they involve the advertisement and sale of goods or services for personal, family, or household purposes.

64. The VCPA is remedial legislation intended to "promote fair and ethical standards of dealings between suppliers and the consuming public." Va. Code Ann. § 59.1-197.

65. Defendant engaged in deceptive, misleading, and unfair acts and practices in violation of Va. Code Ann. § 59.1-200, including but not limited to: (1) Advertising tickets on its websites with intent not to sell them as advertised, or with intent not to sell at the price or upon the terms advertised, in violation of § 59.1-200(A)(8) and (2) Using deception, false pretense, or misrepresentation in connection with a consumer transaction, in violation of § 59.1-200(A)(14).

66. Defendant advertised ticket prices that did not include all mandatory fees or surcharges. Defendant's online sales platforms displayed deceptively low prices throughout the purchase process while concealing a mandatory fee, labeled as a "Booking Fee," "Fuel Surcharge" and/or "Service Fee" that was only revealed after consumers had committed substantial time and effort to the transaction.

67. Defendant's omission of the mandatory fee was material, as the total price of tickets was a primary factor in consumers' purchasing decisions.

68. Defendant intentionally designed its sales process to mislead consumers by: presenting lower initial prices; hiding the true, higher cost of tickets until the end of the checkout process; and using "dark patterns," including countdown timers, to heighten purchasing pressure and reduce the likelihood that consumers would abandon the transaction after learning of the hidden fee or comparison shop.

CLASS ACTION COMPLAINT

69.    Defendant's deceptive conduct had the tendency, capacity, and effect of misleading reasonable consumers and did in fact mislead Plaintiff and members of the Class.

70.    Plaintiff and the Class were deceived and misled by Defendant's representations that the listed price was the full ticket price and were induced to purchase tickets and pay the hidden service fee as a result.

71.    Plaintiff and the Class suffered ascertainable losses as a result of Defendant's unlawful conduct, including but not limited to the amount of the undisclosed and unlawful fees paid, the loss of the opportunity to make informed purchasing decisions, and the expenditure of additional time and cognitive effort caused by Defendant's deception.

72.    Defendant's violations of the VCPA were willful, knowing, and intentional, as Defendant knew or should have known of its obligations to truthfully and accurately present the price of bus tickets under the VCPA and nonetheless continued to advertise and sell tickets using hidden-fee, drip-pricing tactics.

73.    Pursuant to Va. Code Ann. § 59.1-204, Plaintiff and the Class seek the greater of their actual damages or statutory damages of $500 per violation, or $1,000 per willful violation and reasonable attorneys' fees and costs.

74.    Plaintiff and the Class further seek equitable relief, including restitution and disgorgement of all unlawfully obtained monies, and such other relief as the Court deems just and proper.

CLASS ACTION COMPLAINT

**SECOND CLAIM FOR RELIEF**
**Violation of Virginia's All-In Pricing Law, Va. Code Ann. § 59.1-608.**
**(on behalf of the Drip Pricing Subclass)**

75.     Plaintiff re-alleges and incorporates by reference paragraphs 1-59 as if fully set forth herein.

76.     Plaintiff and the members of the Drip Pricing Subclass are "persons," and Defendant is a "supplier" engaged in "consumer transactions" within the meaning of Va. Code Ann. § 59.1-198 as set forth above in paragraphs 61-63.

77.     Defendant advertises and sells bus tickets via an online service to consumers in Virginia for personal, family, and household use.

78.     Virginia's All-In Pricing Law, Va. Code Ann. § 59.1-608(A), prohibits any supplier, in connection with a consumer transaction, from "advertising or displaying a price for goods or services without clearly and conspicuously displaying the total price, which shall include all mandatory fees or surcharges."

79.     "Mandatory fees or surcharges" include any additional amount that must be paid in order to purchase the advertised good or service, and exclude only taxes or assessments imposed by a government or government-approved entity. Va. Code Ann. § 59.1-607.

80.     Defendant violated § 59.1-608 by advertising and displaying ticket prices that did not include mandatory fees that consumers were required to pay in order to complete a ticket purchase.

81.     At every step of Defendant's online purchase flow, consumers were shown ticket prices that appeared to be complete, yet Defendant added a mandatory fee, labeled as a "Booking

20

CLASS ACTION COMPLAINT

Fee," "Fuel Surcharge" and/or "Service Fee" that was only revealed after consumers had committed substantial time and effort to the transaction.

82.    No portion of Defendant's hidden fees were imposed by any government or government-approved entity. The fee was entirely created and retained by Defendant for its own benefit.

83.    Defendant's failure to include mandatory fees in its displayed prices rendered its price advertisements false, misleading, and deceptive, and deprived consumers of the ability to compare true prices or make informed purchasing decisions.

84.    Defendant's unlawful omission was material and caused injury to Plaintiff and the Drip Pricing Subclass, including: payment of unlawful, undisclosed fees, loss of the opportunity to make informed purchasing choices; and time and effort wasted navigating Defendant's misleading checkout process.

85.    Pursuant to Va. Code Ann. § 59.1-610, a violation of § 59.1-608 constitutes a prohibited practice under the Virginia Consumer Protection Act and is subject to all enforcement provisions and remedies provided by Va. Code Ann. §§ 59.1-196 et seq.

86.    Defendant's violations were willful and knowing. Defendant knew or should have known of Virginia's All-In Pricing requirements, which took effect July 1, 2025, yet continued to use drip-pricing tactics and hidden service fees designed to mislead consumers and inflate profits.

87.    As a direct and proximate result of Defendant's conduct, Plaintiff and the subclass suffered ascertainable losses and seek: restitution and disgorgement of unlawfully obtained monies; the greater of actual damages or statutory damages of $500 per violation, or $1,000 per willful violation, under §§ 59.1-610 and 59.1-204; and reasonable attorneys' fees and costs.

## **PRAYER FOR RELIEF**

CLASS ACTION COMPLAINT

WHEREFORE, Plaintiff Boyd, individually and on behalf of the Class prays for relief and judgment as follows:

A.  For an order certifying this case as a class action and appointing Plaintiff Boyd's counsel as Class Counsel;

B.  For an order finding in favor of Plaintiff and the Class on all claims alleged herein;

C.  For actual or statutory damages in amounts allowed by law and/or to be determined by the Court and/or jury;

D.  For prejudgment interest on all amounts awarded;

E.  For an order of restitution and all other forms of equitable monetary relief appropriate by statute;

F.  For an order awarding Plaintiff Boyd and the Class their reasonable attorneys' fees, expenses, and costs of suit as appropriate by statute; and

G.  Awarding such other equitable or other relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all claims and issues so triable.

Dated: April 21, 2026                    Respectfully Submitted,

**RAVINDRAN LAW FIRM, PLLC**

By:   */s/ Arun G. Ravindran*

Arun G. Ravindran
2525 Ponce de Leon Blvd., Suite 300
Coral Gables, FL 33134
Telephone: (305) 677-8713
E-Mail: arun@ravindranlaw.com

*Counsel for Plaintiff and the Putative Class*

CLASS ACTION COMPLAINT